OPINION OF THE COURT
Lester B. Adler, J.
Seeking a writ of habeas corpus, petitioner alleges that, at his preliminary parole revocation hearing, (1) respondent New York State Department of Corrections and Community Supervision (DOCCS) failed to establish probable cause to believe that petitioner had violated a condition of his parole in an important respect (see Executive Law § 259-i [3] [c] [iv]) and (2) hearsay evidence was admitted in violation of petitioner’s right to confront adverse witnesses. For the reasons set forth below, the application is granted.
Factual Background
The submissions demonstrate the following: On or about January 17, 2017, petitioner was released from incarceration subject to postrelease supervision through September 2019.[1] On or about January 22, 2017, DOCCS declared petitioner delinquent, and on or about February 3, 2017, the agency lodged a warrant claiming that he had violated seven conditions of his parole beginning on January 22, 2017. Later on February 3, 2017, DOCCS served petitioner with a notice of violation and a violation of release report listing the charges.
Petitioner elected to have a preliminary parole violation hearing before a Hearing Officer, which was held on February 14, 2017. Petitioner, his attorney, and petitioner’s assigned Parole Officer (P.O.), Patricia Middleton, appeared. At the outset, Middleton stated that she would proceed only with the third listed charge, which alleged that petitioner “violated Rule #6 of the rules governing his release in that on 1/22/17 and thereafter he failed in his immediate duty to notify his [Parole Officer] *351 of his arrest for [criminal possession of a controlled substance] in the Seventh Degree [and] possession or selling unstamped cigarettes (untaxed).”
“Rule #6,” found in a certificate of release to parole supervision which petitioner executed on July 20, 2016, provides as follows: “I will notify my Parole Officer immediately any time I am in contact with or arrested by any law enforcement agency. I understand that I have a continuing duty to notify my Parole Officer of such contact or arrest.” The certificate indicates that petitioner was to report the contact or arrest to “P.O. Middleton [Senior Parole Officer (S.P.O.)] [Miguel] Medina.”
Middleton testified that, in December 2016, she was assigned to supervise petitioner upon his release the following month. Middleton stated that she had supervised petitioner’s parole before. However, P.O. Dennis Void, instead of Middleton, met with petitioner for his initial postrelease “arrival report” on January 18, 2017.
On January 30, 2017, Middleton received an “arrest notification” generated by the Department of Criminal Justice Services (DCJS), which indicated that the police had arrested petitioner on January 27, 2017. Middleton testified that, in the normal course of its business, the DCJS automatically generates notifications of parolees’ arrests and sends them to the parolees’ supervising parole officers. Over the objection of petitioner’s counsel, the Hearing Officer admitted the arrest notification into evidence.
After learning of petitioner’s arrest, Middleton discussed the matter with the Assistant District Attorney who was prosecuting the criminal case. She independently obtained the case docket number and investigated its status, and learned that petitioner was in custody.
Middleton then reviewed her voice mail messages on her DOCCS cell and office phones to check whether petitioner had tried to contact her since his arrest. Petitioner had not called her. Middleton then spoke with her supervisor, S.P.O. Medina; they decided to have a parole warrant issued against petitioner. Middleton also stated that she “[didn’t] have any information that [petitioner] reached out to myself or to [Medina].”
Middleton called P.O. Void to testify about his “arrival report” meeting with petitioner. Void testified that he prepared written special conditions of release to parole supervision dated January 18, 2017, which petitioner signed to acknowledge receipt. The special conditions provided as follows:
*352 “I WILL report to my assigned Parole Officer on Monday of each and every week, or as directed, between the hours of 9:00 a.m. and 10:00 a.m.
“I WILL report at location: 314 W. 40th ST. NYC
“Phone: (212) 239-5055.”
The listed telephone number is Medina’s. Void testified that petitioner asked for contact information for “his P.O. of record” (i.e., Middleton), but Void couldn’t recall Middleton’s telephone number. Instead, Void provided petitioner with Medina’s telephone number.
On cross-examination, Middleton acknowledged that, after learning about petitioner’s arrest, she did not speak with the arresting officer. She also stated that she had not asked Medina or the arresting police officer to testify at the hearing. She knew petitioner had been incarcerated since his arrest on January 27, 2017, but did not review the log of his telephone calls while in custody to ascertain whether he had access to a telephone and whether he tried to contact DOCCS.
In closing, petitioner’s counsel renewed his objection to admitting the arrest notification Middleton had received, arguing that it did not qualify under the business record hearsay exception, and that there was no other evidence of petitioner’s arrest.
As for petitioner’s alleged failure to report his arrest, counsel pointed out that DOCCS had never established whether petitioner had access to a telephone while in custody from January 27, 2017 until February 3, 2017, when he was served with the notice of violation. Furthermore, counsel argued, DOCCS had not established that petitioner was ever given Middleton’s contact information. Instead, Void had testified that he gave petitioner Medina’s telephone number. Counsel objected that Medina was not asked to testify at the hearing whether petitioner had contacted or tried to contact him.
The Hearing Officer concluded the hearing by finding probable cause to believe that petitioner had failed to immediately notify his parole officer about his arrest. The Hearing Officer also found that “[i]n regard to [petitioner] notifying his parole officer!,] he was given the contact number for [Medina,] and [Medina] conferenced this case with [Middleton] before the issuance of the warrant.” The Hearing Officer added that “[t]here was mention of [Medina] indicating that there was a contact from [petitioner]. The warrant was issued three business days *353 after his arrest, which is a total of five days after his arrest and there was no contact from [petitioner].”
Petition
As a threshold matter, in accordance with CPLR 103 (c) and in the interests of justice, this court shall convert petitioner’s application to a special proceeding under CPLR article 78 to challenge DOCCS’s actions. In his reply, petitioner acknowledges that habeas corpus relief is unavailable to him because he is incarcerated for criminal charges that are not based upon his alleged parole violation (see People ex rel. Townsend v New York State Bd. of Parole, 97 AD2d 386 [1st Dept 1983]). Regardless, it is appropriate to convert this proceeding to address petitioner’s substantive claims.
Contending that the evidence adduced at the hearing did not support the probable cause finding, petitioner first argues that DOCCS impermissibly presented only hearsay evidence to prove the two main factual issues: whether petitioner was arrested and whether he failed to promptly notify his parole officer about his arrest. According to petitioner, DOCCS’s resort to hearsay violated the evidentiary standards for parole hearings and abrogated his right to confront adverse witnesses.
Petitioner’s claims have merit. Turning first to the applicable evidentiary standard, it is well settled that the strict rules of evidence are relaxed at a parole revocation hearing and that hearsay evidence is admissible (People ex rel. Mitchell v Warden, Anna M. Kross Corr. Facility, 49 Misc 3d 1214[A], 2015 NY Slip Op 51634[U] [Sup Ct, Bronx County 2015]). But a determination that parole was violated cannot be based entirely on hearsay evidence (see People v Rennie, 190 AD2d 830, 830 [2d Dept 1993], lv denied 81 NY2d 975 [1993]; People v Machia, 96 AD2d 1113, 1114 [3d Dept 1983] [“A finding of a . . . violation . . . requires a residuum of competent legal evidence in the record”]).
Despite the relaxed evidentiary standards at hearings, “a parolee has due process and statutory rights to confront adverse witnesses whose statements are offered” (People ex rel. McGee v Walters, 62 NY2d 317, 319 [1984]). A parolee’s rights to confront adverse witnesses apply to preliminary parole revocation hearings, which the witnesses may be compelled to attend (see Executive Law § 259-i [3] [c] [iii] [providing that, at a preliminary hearing, a parolee “has the right to confront the *354 witnesses against him or her”]; People ex rel. Rosenfeld v Sposato, 87 AD3d 665, 665-666 [2d Dept 2011]). “Although these rights embrace a strong preference for face-to-face confrontation and cross-examination, a hearing examiner may, nevertheless, upon a specific finding of good cause, permit the introduction of adverse hearsay statements without affording the parolee an opportunity to confront their declarant” (McGee, 62 NY2d at 319 [emphasis added]). Further, “[a]ny determination that dispenses with the need for confrontation requires consideration of the rights’ favored status, the nature of the evidence at issue, the potential utility of cross-examination in the fact-finding process, and the State’s burden in being required to produce the declarant” {id. at 319-320).
In this case, enough competent evidence was adduced to find probable cause to believe that petitioner was arrested on January 27, 2017. The arrest notification that Middleton received may have constituted hearsay, but that evidence was supplemented by Middleton’s testimony that she personally investigated petitioner’s situation by discussing the arrest with the prosecutor and using public sources to confirm petitioner was in police custody (see People ex rel. Thomas v Warden, Sup Ct, Bronx County, July 6, 2015, Price, J., index No. 250654-15, slip op at 9).
However, DOCCS failed to establish that petitioner could have notified the agency that he had been arrested but failed to do so. Middleton was able to testify, from firsthand knowledge, that petitioner did not contact her after the arrest, as required under Rule #6 of his release conditions. However, Middleton did not know whether petitioner had been provided with her contact information. In fact, and contrary to DOCCS’s claim, Void testified that he had provided only Medina’s telephone number to petitioner, and the special conditions that Void prepared and gave to petitioner list only that number.
DOCCS failed to proffer sufficient evidence as to whether petitioner called Medina’s number, which Void had directed him to use to report the arrest. Medina did not testify as to his firsthand knowledge. As for hearsay, while Middleton testified that she had discussed the case with Medina before issuing the warrant and did not have information that petitioner had called Medina, Middleton did not, contrary to DOCCS’s claim, testify that Medina told her that petitioner had not called.
*355 Moreover, Middleton did not indicate which alleged parole violations by petitioner were discussed. In fact, Middleton testified that she and Medina issued the warrant because petitioner was not “abiding by his conditions.” The alleged violation of Rule #6, upon which DOCCS proceeded at the preliminary hearing, was one of seven charges listed against petitioner.
Even if the Hearing Officer inferred from Middleton’s testimony that Medina told her petitioner had not contacted Medina, the Hearing Officer violated petitioner’s confrontation rights by dispensing with Medina’s firsthand testimony without a finding of good cause for doing so (see McGee). In fact, the Hearing Officer neglected to engage in any good cause analysis before admitting the adverse hearsay statements.[2]
In the absence of a specific good cause finding, “a due process violation must be presumed” (Rosenfeld, 87 AD3d at 667; see also McGee, 62 NY2d at 322-323). Accordingly, a writ of habeas corpus shall be issued and the parole warrant vacated. Contrary to DOCCS’s argument, since due process was violated, the proposed remedy of affording petitioner a new preliminary hearing is inadequate (see Rosenfeld at 667).
Finally, DOCCS claims that the petition must be transferred to the Appellate Division for disposition because “the [p]etition raises the issue of substantial evidence under CPLR § 7803 (4).” That position lacks merit. This court grants the petition on the ground that due process was violated, which obviates any substantial evidence question (see CPLR 7804 [g]).
Accordingly, it is ordered and adjudged that, in accordance with CPLR 103 (c) and in the interests of justice, this application for a writ of habeas corpus brought under CPLR article 70 is converted to a special proceeding challenging respondents’ actions, brought under CPLR article 78; and it is further ordered and adjudged that the petition is granted to the extent that (1) the parole delinquency that respondents declared against petitioner on or about January 22, 2017 is canceled and (2) the parole warrant lodged against petitioner on or about February 3, 2017 is vacated; and it is further ordered and *356 adjudged that, unless petitioner is presently incarcerated because of another warrant or commitment that is not predicated upon alleged parole violations, petitioner’s release from the custody of the respondent Warden is directed.

. The parties give inconsistent dates in their papers, but it appears to this court that petitioner was originally released from incarceration in July 2016, and was thereafter re-incarcerated. On or about January 17, 2017, petitioner was re-released.

. DOCCS’s argument that petitioner failed to preserve his objections lacks merit. Counsel objected to introducing to both hearsay evidence about petitioner’s efforts to contact Medina and also to Medina’s failure to testify. Those objections required the Hearing Officer to determine whether there was good cause for admitting the hearsay despite petitioner’s confrontation rights (see Rosenfeld, 87 AD3d 665).